UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
RONALD JOHNSON,

Plaintiff,

-v-

THE CITY OF NEW YORK; New York City Police
Department Detective JOSE VARGAS (Shield No. 6747),
in his individual capacity; New York City Police Department
Officer JERRY WOLVERS (Shield No. 508), in his
individual capacity; New York City Police Department
Detective JOSEPH SCIALABBA (Shield No. 7076), in his
individual capacity; New York City Police Department
Officer JOHN DOE (the name "John Doe" being fictitious
as his true name, rank and shield number are currently
unknown), in his individual capacity,

Defendants.

------------------------------------------------------------------------x

**COMPLAINT AND DEMAND
FOR A JURY TRIAL**

Index No. 15-CV-_____



Plaintiff RONALD JOHNSON, through his attorney Robert M. Quackenbush of Rankin
& Taylor, PLLC, as and for his complaint, does hereby state and allege:

<u>PRELIMINARY STATEMENT</u>

1.  This is a civil rights action brought to vindicate plaintiff's rights under the Fourth
    Amendment to the Constitution of the United States, through the Civil Rights Act of 1871, *as
    amended*, codified as 42 U.S.C. § 1983.

2.  Plaintiff RONALD JOHNSON was unlawfully beaten by defendant-officers of the New
    York City Police Department ("NYPD") after had already been rear-cuffed and after he was
    fully compliant with his arrest.

3.  By beating Mr. JOHNSON when he was compliant and already restrained, the defendant-
    officers violated Mr. JOHNSON's right under the Fourth Amendment, as applied to the
    States through the Fourteenth Amendment, to be free from the use of excessive force.

1

4. Accordingly, Mr. JOHNSON seeks an award of compensatory and punitive damages and attorneys' fees.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over federal claims pursuant to 28 U.S.C. §§ 1331, 1343(a)(3-4). This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988 for violations of the Fourth Amendment to the Constitution of the United States.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Mr. JOHNSON's claims arose in Bronx County, within the confines of this judicial district.

7. An award of costs and attorneys' fees is authorized pursuant to 42 U.S.C. § 1988.

## PARTIES

8. Plaintiff RONALD JOHNSON was at all times relevant to this action a resident of the County of Bronx in the State of New York.

9. Defendant THE CITY OF NEW YORK ("CITY") is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant CITY assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risks attach to the public consumers of the services provided by the NYPD.

10. Defendants NYPD Detective ("Det.") JOSE VARGAS (Shield No. 6747), NYPD Police Officer ("P.O.") JERRY WOLVERS (Shield No. 508), Det. JOSEPH SCIALABBA (Shield No. 7076), and P.O. JOHN DOE (the name "John Doe" being fictitious as his true name, rank and shield number are currently unknown) (all collectively referred to as "officer-

defendants") are and were at all times relevant herein, officers, employees and agents of the NYPD.

11. Upon information and belief, on March 1, 2013, Dets. VARGAS and SCIALABBA and P.O. WOLVERS were assigned to the NYPD's Bronx Narcotics Bureau.

12. The full, true name, shield number and rank of defendant-officer P.O. DOE is not currently known to Mr. JOHNSON. However, P.O. DOE was an employee or agent of the NYPD on the day of the incident described below. Accordingly, P.O. DOE may be entitled to representation in this action by the New York City Law Department ("Law Department") upon his request, pursuant to New York General Municipal Law § 50-k. The Law Department, then, is hereby put on notice (a) that Mr. JOHNSON intends to name P.O. DOE as defendant in an amended pleading once his true name, rank and shield number become known and (b) that the Law Department should immediately begin preparing his defenses in this action, if any.

13. The officer-defendants are being sued herein in their individual capacities.

14. At all times relevant herein, the officer-defendants were acting under color of state law in the course and scope of their duties and functions as agents, servants, employees and officers of NYPD and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties. They were acting for and on behalf of the NYPD at all times relevant herein, with the power and authority vested in them as officers, agents and employees of the NYPD and incidental to the lawful pursuit of their duties as officers, employees and agents of the NYPD.

## STATEMENT OF FACTS

15. The incident here at issue occurred on March 1, 2013 at approximately 8:30 p.m. and thereafter.

16. At approximately the date and time above, Mr. JOHNSON was visiting with a friend and the friend's family inside the friend's apartment on the fifth floor of 815 Pelham Parkway North in the Bronx.

17. Because the friend is asthmatic, Mr. JOHNSON walked out of the apartment in order to smoke a cigarette.

18. Mr. JOHNSON lit a cigarette in the hallway and pressed the elevator button to take him downstairs to finish smoking.

19. When the elevator door opened, Det. VARGAS (in plainclothes) walked out of the elevator as Mr. JOHNSON was about to enter it.

20. Det. VARGAS asked Mr. JOHNSON where he was coming from.

21. In response, Mr. JOHNSON pointed in the direction of his friend's apartment door.

22. Det. VARGAS did not identify himself as a police officer, and Mr. JOHNSON at that time had no reason to believe Det. VARGAS was a police officer.

23. Det. VARGAS asked for Mr. JOHNSON's identification and grabbed Mr. JOHNSON's arm, preventing Mr. JOHNSON from getting on the elevator.

24. Immediately after Det. VARGAS grabbed Mr. JOHNSON's arm, P.O. WOLVERS (in plainclothes) came off a nearby stairwell and began attacking Mr. JOHNSON.

25. As P.O. WOLVERS started punching, Mr. JOHNSON for the first time saw the officer-defendant's handcuffs and believed the men to be police officers.

26. Mr. JOHNSON screamed for help while being punched.

27. One of the officer-defendants grabbed Mr. JOHNSON's sweatshirt, and Mr. JOHNSON slid out of it, leaving him shirtless.

28. Mr. JOHNSON then ran from his assailants and headed towards his home at 2245 Bronxwood Avenue, less than a block away.

29. Mr. JOHNSON arrived outside of 2245 Bronxwood Avenue and rang the buzzer for his apartment.

30. Mr. JOHNSON's mother answered the intercom but, before she could let Mr. JOHNSON inside his building, Det. SCIALABBA pointed his firearm at Mr. JOHNSON and told Mr. JOHNSON he would shoot if Mr. JOHNSON moved.

31. In response, Mr. JOHNSON lay down on the ground and willingly submitted to rear-cuffing.

32. Det. SCIALABBA applied the handcuffs far tighter than necessary to prevent Mr. JOHNSON's hands from slipping out, immediately causing Mr. JOHNSON great pain.

33. As soon as Mr. JOHNSON was rear-cuffed on the ground and no longer attempting to escape, Det. VARGAS and P.O. WOLVERS caught up and arrived outside the building.

34. Out of breath, the officer-defendants immediately began kicking Mr. JOHNSON in the back of the head and elsewhere and otherwise beat him, and/or failed to intervene to prevent other officer-defendants from beating him.

35. One or more of the strikes to the back of Mr. JOHNSON's head forced Mr. JOHNSON's face to smack the pavement, breaking one of his top central incisors (front teeth) in half.

36. The use of force also split Mr. JOHNSON's eyebrow and his lip, causing his face to become swollen and painful to the touch.

37. When Mr. JOHNSON looked up from the beating, he saw his mother and neighbors looking on in horror.

38. In front of these witnesses, the officer-defendants dragged Mr. JOHNSON, who was still shirtless, across the pavement by grabbing and pulling him by the handcuffs, causing painful abrasions all over his chest and extreme pain to his wrists.

39. The officer-defendants put Mr. JOHNSON into an NYPD van and – despite knowing Mr. JOHNSON was shirtless, and despite the cold weather outside – turned up the air conditioning on full blast.

40. The NYPD van was driven around for several hours before arriving at a police precinct stationhouse. Inside the van, Mr. JOHNSON requested that the officer-defendants loosen his handcuffs in order to alleviate the constant pain, but the officer-defendants refused to do so.

41. Mr. JOHNSON told the police he would not provide his name until he was given access to medical treatment. In response, Det. VARGAS stated, in sum and substance, "YOU DON'T WANNA GIVE ME A NAME? I'LL GIVE YOU ONE."

42. Mr. JOHNSON was thereafter booked under the name of "Johnathan Jenkins," a name that Det. VARGAS invented and one which had no connection whatsoever to Mr. JOHNSON.

43. Mr. JOHNSON was charged with marijuana possession (N.Y. Pen. L. §§ 221.05 and 221.10(1)), resisting arrest (N.Y. Pen. L. § 205.30) and – based on the fabricated name that Det. VARGAS invented – false personation (N.Y. Pen. L. § 190.23).

44. The arraignment court set bail and Mr. JOHNSON was remanded to the custody of the New York City Department of Correction, where he was booked under the name "Johnathan Jenkins" despite the fact that officials had by that time verified his name as "Ronald Johnson."

45. Mr. JOHNSON received medical treatment for his injuries for the first time at a Rikers Island detention facility.

46. On December 17, 2013, the criminal court granted the prosecution's motion to dismiss all of the charges against Mr. JOHNSON.

47. As a result of the excessively tight handcuffing which the officers refused to alleviate, and as a result of the officers dragging Mr. JOHNSON across the pavement by pulling on his handcuffs, Mr. JOHNSON continues to have tingling sensations, pain and numbness in his wrists and fingers.

48. The beating of Mr. JOHNSON in front of his mother and neighbors traumatized Mr. JOHNSON and caused him to become fearful of the police.

49. Because half of one of his front central incisors is missing, Mr. JOHNSON feels that members of the public stereotype him as being the type of person who engages in violent conduct, causing Mr. JOHNSON to be self-conscious and humiliated in public.

**FIRST CLAIM FOR RELIEF**
**EXCESSIVE FORCE**
**FOURTH AMENDMENT THROUGH 42 U.S.C. § 1983**
(*Against the officer-defendants*)

50. Mr. JOHNSON repeats and realleges each and every allegation contained in paragraphs numbered "1" through "49" with the same force and effect as if fully set forth herein.

51. The level of force employed by the officer-defendants and the officer-defendants' failure to intervene to prevent other officer-defendants' uses of force were objectively unreasonable and violated Mr. JOHNSON's constitutional right, guaranteed under the Fourth Amendment to the United States Constitution through 42 U.S.C. § 1983, to be free from the use of excessive force.

52. As a result of the aforementioned conduct of the officer-defendants, Mr. JOHNSON was subjected to unreasonably excessive force, causing pain, physical, psychological and emotional injury, and other damages and injuries.

**SECOND CLAIM FOR RELIEF**
**DEPRIVATION OF RIGHTS**
**UNDER THE FOURTH AMENDMENT THROUGH 42 U.S.C. § 1983**
*(Against the CITY OF NEW YORK)*

53. Mr. JOHNSON repeats and realleges each and every allegation contained in paragraphs numbered "1" through "52" with the same force and effect as if fully set forth herein.

54. All of the acts and omissions by the officer-defendants described above were carried out pursuant to overlapping policies and practices of the CITY OF NEW YORK which were in existence at the time of the conduct alleged herein and were engaged in with the full knowledge, consent, and cooperation and under the supervisory authority of defendant CITY and its agency, the NYPD.

55. Defendant CITY and the NYPD, by their policy-making agents, servants and employees, authorized, sanctioned and/or ratified the officer-defendants' wrongful acts; and/or failed to prevent or stop those acts; and/or allowed or encouraged those acts to continue.

56. The acts complained of were carried out by the aforementioned officer-defendants in their capacities as police officers and officials pursuant to customs, policies, usages, practices, procedures and rules of the CITY and the NYPD, all under the supervision of ranking officers of the NYPD.

57. The aforementioned widespread practices and customs of the CITY and the NYPD include, but are not limited to, using excessive force on individuals who have already been handcuffed or are compliant.

58. The existence of aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar wrongful conduct, as documented in the following civil rights actions filed against the CITY:

a. <u>Tyler v. City of New York</u>, 12-CV-1975 (JBW) (CLP) (E.D.N.Y.) (while arrestee is handcuffed and compliant, officers sweep out arrestee's legs and drive arrestee's head into the pavement, causing injuries which required hospitalization);

b. <u>Thompson v. City of New York</u>, 10-CV-3603 (ARR) (SMG) (E.D.N.Y.) (while arrestee is handcuffed and compliant, police officers use their Asp, or expandable metal baton, to beat plaintiff and also apply pepperspray to his face without cause);

c. <u>Lotorto v. City of New York</u>, 10-CV-1223 (ILG) (JMA) (E.D.N.Y.) (police officers beat, arrest and destroy a video recording of a bystander who was recording an arrest occurring in public);

d. <u>Zabala v. City of New York</u>, 3771/2010 (Sup. Ct., Kings Co.) (police officers severely beat and TASER a compliant, prone, bloodied and semi-conscious suspect after he had surrendered);

e. <u>Ashe v. City of New York</u>, 09-CV-9696 (GBD) (THK) (S.D.N.Y.) (police officers beat and use pepperspray upon arrestees even though they were both already handcuffed and compliant); and

f. <u>Moise v. City of New York</u>, 09-CV-9855 (DC) (JLC) (S.D.N.Y.) (police officers beat and use pepperspray upon a compliant arrestee while he was already in handcuffs).

59. The existence of the above-described well-settled and widespread customs and practices is known to, encouraged and/or condoned by supervisory and policy-making officials of the NYPD and the CITY, including but not limited to former NYPD Commissioner Raymond Kelly.

60. The actions of the officer-defendants resulted from and were taken pursuant to the above-mentioned well-settled and widespread custom and practice of the CITY, which was implemented by members of the NYPD.

61. All of the foregoing acts by the officer-defendants deprived Mr. JOHNSON of his Fourth Amendment right to be free from excessive force.

62. Defendant CITY knew or should have known that the acts alleged herein would deprive Mr. JOHNSON of his Fourth Amendment rights.

63. Defendant CITY is directly liable and responsible for the acts of the officer-defendants because it repeatedly and knowingly failed to properly supervise, train, instruct, and discipline them and because it repeatedly and knowingly failed to enforce the rules and regulations of the CITY and NYPD, and to require compliance with the United States Constitution.

64. Despite knowledge of such unlawful practices and/or customs, these supervisory and policy-making officials of the NYPD and the CITY, including but not limited to former NYPD Commissioner Kelly, did not take steps to terminate these practices and/or customs, did not discipline individuals who engaged in such practices and/or customs, or otherwise properly train police officers with regard to the constitutional and statutory limits on the exercise of their authority, and instead sanctioned and ratified these practices and/or customs through their active encouragement of, deliberate indifference to and/or reckless disregard of the effect of said policies, practices and/or customs upon the constitutional rights of persons in the City of New York.

65. The actions of the officer-defendants resulted from and were taken pursuant to the aforementioned well-settled and widespread custom and practice of the CITY, which was implemented by agents or employees of the NYPD, of employing wholly unprovoked and excessive force.

66. Defendants, collectively and individually, while acting under color of state law, acquiesced in a pattern of unconstitutional conduct by subordinate police officers and were directly responsible for the violation of Mr. JOHNSON's Fourth Amendment rights, resulting in the injuries set forth above.

**JURY DEMAND**

67. Mr. JOHNSON demands a trial by jury in this action on each and every one of his damage

claims.

  *WHEREFORE*, Mr. JOHNSON demands judgment against the defendants individually

and jointly and prays for relief as follows:

  a.   That he be compensated for violation of his constitutional and statutory rights, pain, suffering, mental anguish, and humiliation; and

  b.   That he be awarded punitive damages against the officer-defendants; and

  c.   That he be compensated for attorneys' fees and the costs and disbursements of this action; and

  d.   For such other further and different relief as to the Court may seem just and proper.

Dated:       New York, New York
             January 13, 2015

                                 Respectfully submitted,

                         By:     _Robert M. Quackenbush_
                                 Robert M. Quackenbush
                                 Rankin & Taylor, PLLC
                                 *Attorneys for the Plaintiff*
                                 11 Park Place, Suite 914
                                 New York, New York 1007
                                 t: 212-226-4507
                                 f: 212-658-9480
                                 e: robert@drmtlaw.com